[Cite as *State v. Crawford*, 2026-Ohio-2957.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


STATE OF OHIO,                 :      APPEAL NO.    C-250408

                              TRIAL NO.     C/25/TRD/2941

     Plaintiff-Appellee,          :

   vs.                              :

DESAREE CRAWFORD,        :          *JUDGMENT ENTRY*

     Defendant-Appellant.      :


This cause was heard upon the appeal, the record, the briefs, and arguments.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is reversed and the appellant is discharged.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.


**To the clerk:**

**Enter upon the journal of the court on 7/31/2026 per order of the court.**


**By:**_____

       **Administrative Judge**

[Cite as *State v. Crawford*, 2026-Ohio-2957.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO.   C-250408 |
| | | TRIAL NO.   C/25/TRD/2941 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N* |
| DESAREE CRAWFORD, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Reversed and Appellant Discharged

Date of Judgment Entry on Appeal: July 31, 2026

*Connie M. Pillich*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Angela Chang*, Hamilton County Public Defender, and *Lora Peters*, Assistant Public Defender, for Defendant-Appellant,

*Dave Yost*, Ohio Attorney General, *Mathura J. Sridharan*, Solicitor General, and *Stephen P. Carney*, Deputy Solicitor General, for Amicus Curiae Ohio Attorney General Dave Yost.

**Z**AYAS**, Presiding Judge.**

{¶1}     Desaree Crawford was charged with standing on a highway for the purpose of soliciting contributions from a vehicle occupant in violation of R.C. 4511.51(B)(1).  Crawford sought to dismiss the charge, arguing that the statute violated her First Amendment rights.  When the court overruled her motion Crawford entered a no-contest plea and was found guilty.   In two assignments of error, Crawford contends that the trial court erred by overruling her motion to dismiss and by finding her guilty of a fourth-degree misdemeanor where the facts as read by the prosecutor were insufficient to support a fourth-degree misdemeanor.  For the following reasons, we reverse the judgment of the trial court and discharge Crawford from further prosecution.

## Factual Background

{¶2}     Desaree Crawford was charged with violating R.C. 4511.51(B)(1), which states, "Except as provided in division (B)(2) of this section, no person shall stand on a highway for the purpose of soliciting employment, business, or contributions from the occupant of any vehicle."   Crawford filed a motion to dismiss the complaint, arguing that the statute was an unconstitutional violation of her right to free speech. The State did not file a response, and the matter proceeded to a hearing.

{¶3}     Crawford first argued that under *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015), the court should apply a strict-scrutiny standard because the law applies to a particular speech due to the topic and message, and is therefore, content based. The statute includes the language "for the purpose of" then specifies certain types of speech, requiring strict scrutiny.  Crawford referenced *Speet v. Schuette*, 726 F.3d 867, 870 (6th Cir. 2013), a Sixth Circuit decision which found Michigan's panhandling law to be unconstitutional.

{¶4} The State argued that the statute had a compelling interest, on its face, to maintain public safety for both motorists and pedestrians. The statute prohibits entering a roadway, as opposed to standing on a sidewalk, for purposes of public safety.

{¶5} A Springdale police officer testified that he observed Crawford speaking to the driver of a car at the end of the ramp from eastbound 275 and Princeton Pike. Crawford held a sign that stated, "Struggling. Homeless. Please help," and referred to a family. Crawford was standing on the highway at the end of the exit ramp. His first observation of Crawford was her standing at the roadside speaking with the driver of a vehicle. Her conduct and sign indicated to the officer that she was soliciting help, and when he asked her what she was doing, she responded, "Making money." The officer testified that the sign verbiage contributed to his conclusion that she was soliciting contributions.

{¶6} The officer testified that if her sign had stated, "Vote for Donald Trump" or "Go Reds," he would not have charged her because it would not appear that she was asking for anything. The officer further testified that he did not need to read her sign to determine that she was violating the statute. Crawford attempted to show the officer various photos of signs and ask if these particular signs would have resulted in criminal charges. The State objected, and the court sustained the objection because the focus of the hearing was the charge that Crawford faced. After hearing the officer's testimony, the court continued the matter.

{¶7} At the next hearing, Crawford argued that the statute prohibited standing on the side of a highway for specific purposes, with a sign. The specific prohibitions are soliciting employment and soliciting contributions. Crawford agreed that the statute prohibits some conduct but also regulates speech that has been

deemed inappropriate. Crawford argued that a strict-scrutiny review was necessary because the statute required solicitation, content-based speech, for a violation. Under R.C. 4511.01(B), a highway is the equivalent of a street, so the statute applied to all roads and streets in Ohio. She further argued that there may be a compelling governmental interest that could be shown, but the State failed to do so.

{¶8} The State argued that Crawford's facial challenge failed because the statute is content neutral and regulates conduct not speech. The statute serves the public-safety interest in preventing pedestrians from stepping into traffic. The statute is limited to highways and not broadly applicable to all public places. The statute is a time, place, and manner restriction that is content neutral and serves significant governmental interests such as public safety.

{¶9} The court agreed that the State had a compelling interest in the safety of drivers on the road and the persons engaged in soliciting. Crawford responded that even assuming a compelling interest, the court must look to the means the statute employs and argued that the State could maintain safety without impacting the content of a person's speech.

{¶10} The State countered that soliciting requires some interaction between a motorist and the person soliciting. A violation requires entering the roadway to accept money from a motorist in a lane of traffic. And in this case, the officer testified that Crawford entered the roadway.

{¶11} The court determined that there is a compelling public interest in the safety of motorists and pedestrians and found the statute to be constitutional.

{¶12} At the next setting, Crawford waived her right to a jury trial and changed her not-guilty plea to no contest. The State read the following facts into the record,

> On or about January 28, 2025, around 2:50 in the afternoon, the

defendant was standing on the exit ramp of Interstate 275 eastbound expressway at the intersection of Princeton Pike for the purpose of soliciting contributions from occupants of vehicles.

All of this was witnessed by Springdale Police Officer [K.L.], and he saw the defendant soliciting funds at this location, and this location is located in Hamilton County.

**{¶13}** When the court asked Crawford if she had anything on the facts, she responded, "Yes, Judge. I think the State has accurately stated the elements of a minor misdemeanor of this, and so I'd ask that you treat this like the minor misdemeanor that's been put on the record." The court asked the prosecutor what aggravating factor was required for a fourth-degree misdemeanor, and the prosecutor stated that within the past year, Crawford had been found guilty of a predicate motor-vehicle or traffic offense on February 6, 2025. The court found Crawford guilty.

**{¶14}** Crawford now appeals, and in two assignments of error, she argues that the trial court erred when it denied her motion to dismiss and found R.C. 4511.51(B) was constitutional and when it found her guilty of a fourth-degree misdemeanor where the facts as read by the prosecutor established that she did not have a qualifying conviction at the time she committed the instant offense.

### Content-Based Regulation

**{¶15}** An appellate court reviews the denial of a motion to dismiss de novo. *State v. Campbell*, 2013-Ohio-5612, ¶ 3 (1st Dist.). An appellate court also reviews constitutional challenges de novo. *Id.*

**{¶16}** Crawford contends that R.C. 4511.51(B) facially violates the First Amendment because it is a content-based regulation of protected speech in a public forum. Specifically, the statute prohibits a person from "stand[ing] on a highway for

the purpose of soliciting employment, business or contributions from the occupant of any vehicle." The State argues that the statute is a content-neutral regulation that restricts unsafe conduct on highways.

{¶17} Both parties correctly agree that solicitation is protected speech. The First Amendment protects "charitable appeals for funds," *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 632 (1980), including begging or panhandling. *See McCraw v. Oklahoma*, 973 F.3d 1057, 1066 (10th Cir. 2020) (concluding that "begging" is a form of protected speech); *Rodgers v. Bryant*, 942 F.3d 451, 456 (8th Cir. 2019) (asking for charity or gifts is protected speech); *Gresham v. Peterson*, 225 F.3d 899, 904 (7th Cir. 2000) ("*Schaumburg* suggests little reason to distinguish between beggars and charities in terms of the First Amendment protection for their speech"); *Reynolds v. Middleton*, 779 F.3d 222, 225 (4th Cir. 2015) ("There is no question that panhandling and solicitation of charitable contributions are protected speech."); *Smith v. City of Fort Lauderdale*, 177 F.3d 954, 956 (11th Cir. 1999) ("like other charitable solicitation, begging is speech entitled to First Amendment protection," citing *Schaumburg* at 632); *Speet*, 726 F.3d at 870 (holding that "begging is a form of solicitation that the First Amendment protects").

{¶18} It is well settled that streets are quintessential public forums. *See Frisby v. Schultz*, 487 U.S. 474, 480 (1988) (a public street is a traditional public forum); *Burson v. Freeman*, 504 U.S. 191, 196 (1992) ("quintessential public forums" include streets); *McCullen v. Coakley*, 573 U.S. 464, 476 (2014) (public streets are "traditional public fora").

{¶19} The government may impose reasonable restrictions on the time, place, or manner of protected speech in a public forum provided the regulation is content neutral, narrowly tailored, and leaves open ample alternatives for communication.

7

*Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). However, content-based regulations "are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163.

{¶20} Therefore, to determine the degree of scrutiny to which the statute will be subjected, this court must first determine whether the statute is content neutral or a content-based regulation. *See id.* at 163-166; *Portage Cty. Educators Assn. for Dev. Disabilities-Unit B v. State Emp. Relations Bd.*, 2022-Ohio-3167, ¶ 13.

{¶21} The Supreme Court's decision in *Reed* delineated that a "crucial first step" in determining whether a law is content-based or content-neutral is to "determine[] whether the law is content neutral on its face." *Reed* at 165. The law must be evaluated on whether it expressly draws distinctions based on communicative content without regard to a government's benign motive, content-neutral justification, or lack of "animus towards the ideas contained in the regulated speech." *Id.* "Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function or purpose." *Id.* Both are subject to strict scrutiny. *Id.*

{¶22} The State refers to numerous cases for the proposition that panhandling ordinances are content neutral or conduct-based regulations. Unfortunately, the State provided no citations for those cases. However, all of the cases predate *Reed*, and "*Reed* makes earlier cases, which had split over what forms of regulation of panhandling were content-based, of limited continuing relevance." *McLaughlin v. City of Lowell*, 140 F.Supp. 3d 177, 185-186 (D.Mass 2015). *See, e.g., Norton v. City of Springfield*, 806 F.3d 411 (7th Cir. 2015) (initially finding anti-panhandling ordinance content-neutral, but on rehearing after the *Reed* decision, finding the

8

ordinance content-based); *Champion v. Commonwealth*, 520 S.W.3d 331, 337-338 (Ky. 2017) (explaining that *Reed* rejected the analysis set forth in *Ward v. Rock Against Racism*, 491 U.S. 781 (1989), that "an otherwise content-based regulation of speech may be content-neutral (and subject to less-exacting scrutiny) simply if the purpose and justification for the law are neutral.").

**{¶23}** The State also argues that the statute restricts conduct, standing on a highway, and is content-neutral because the speech is incidental to the restricted conduct. The solicitation itself is merely a "non-exhaustive list" of motivations for the offensive conduct.

**{¶24}** However, the statute regulates standing on a highway only when the purpose is to solicit employment, business, or contributions. On its face, the statute distinguishes solicitation from all other speech and applies the restriction only to solicitation of employment, business, or contributions from an occupant of the vehicle. As Crawford points out, the statute allows a person to approach the occupant of a vehicle to collect signatures for petitions, collect charitable contributions with a permit, or distribute information. Even the Attorney General, in its amicus brief, concedes that the statute would not bar a person from seeking signatures on political petitions. The statute defines the regulated speech by its purpose, which is a content-based restriction. *See Reed*, 576 U.S. at 165; R.C. 4511.51(B)(1) ("no person shall stand on a highway *for the purpose of* soliciting employment, business, or compensation" (Emphasis added.)).

**{¶25}** Moreover, a regulation is content-based if it requires "enforcement authorities to examine the content of the message that is conveyed to determine whether a violation has occurred." *McCullen v. Coakley*, 573 U.S. 464, 479 (2014) (quoting *F.C.C. v. League of Women Voters of California*, 468 U.S. 364, 383 (1984)).

9

At the hearing on the motion to dismiss, the officer admitted that the sign Crawford held indicated she was soliciting, but he testified that the arrest was based on her statement that she was "[m]aking money." He further conceded that if Crawford were holding a sign saying "Vote for Donald Trump" or "Go Reds," she would not be charged because it would not "appear that she's asking for something at that point." Thus, an enforcement authority must examine the message conveyed to determine whether a violation occurred. *See id.*, *Portage Cty.* 2022-Ohio-3167, at ¶ 18.

{¶26} Because R.C. 4511.51 (B)(1) is a content-based restriction, it is subject to strict scrutiny. *See Reed*, 576 U.S. at 165, 171; *Portage Cty.* at ¶ 23. Strict scrutiny "requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed* at 172. When a statute regulates speech based on its content, "it must be the least restrictive means readily available to serve that interest." *Portage Cty.* at ¶ 24. "To meet the requirement of narrow tailoring, the government must demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interests." *McCullen*, 573 U.S. at 495.

{¶27} The State has not demonstrated that its anti-solicitation statute is narrowly tailored to serve its compelling interest in the least-restrictive way. The State argues that the law furthers its compelling interest in public and pedestrian safety. The State has a compelling interest in roadway safety. *See State v. Hochhausler*, 76 Ohio St.3d 455, 467 (1996).

{¶28} However, the State provided no evidence that the dangers of roadway solicitation is prevalent on all state roads or that this statute is narrowly tailored to achieve its stated goal. Although the State argues that roadway solicitation threatens the safety of pedestrians and vehicles, it provided no evidence to support this

contention. *See Reynolds v. Middleton*, 779 F.3d 222, 231 (4th Cir. 2014) (the county provided no evidentiary support of a county-wide problem to support its argument that the danger caused by roadside solicitation is present on all roads); *McCraw v. City of Oklahoma City*, 973 F.3d 1057,1072 (10th Cir. 2020) (City provided no evidence of accidents involving vehicles and pedestrians to support its panhandling ordinance); *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 949 (9th Cir. 2011) (en banc) (invalidating a regulation prohibiting solicitation on "all streets and sidewalks in the City" in the absence of evidence supporting the existence of a threat to public safety and traffic flow posed by solicitation on all streets and sidewalks in the city). Consequently, the State failed to meet its burden to establish the harms due to solicitation in the streets or that the statute alleviates those harms in the least-restrictive way.

**{¶29}** Accordingly, we sustain the first assignment of error, rendering the second assignment of error moot.

## Conclusion

**{¶30}** Having sustained Crawford's first assignment of error, we reverse the judgment of the trial court and discharge Crawford from further prosecution.

Judgment reversed and appellant discharged.

**CROUSE** and **MOORE, JJ.,** concur.

11